UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN J. SOEHNLEN and | ) | Case No.  5:06 CV 1594 |
| PHILIP J. SOEHNLEN, | ) | |
| | ) | Judge David D. Dowd, Jr. |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | (Resolving ECF# 70) |
| AULTMAN HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff, Kathryn Soehnlen was admitted to Aultman Hospital from March 15 to March 30,

2005 for a plasmapheresis treatments where albumin, a human blood product, was transfused.[1]  On

May 2, 2005 Mrs. Soehnlen's blood work revealed elevated ALT-SGPT and AST-SGOT levels,

which had previously been normal.[2]  These levels continued to climb and on July 5, 2005, blood

work was reactive to the antibodies for hepatitis C virus.  The presence of this virus was confirmed

on July 21, 2005.  Mrs. Soehnlen filed suit claiming exposure to hepatitis C during her admission

at Aultman Hospital.[3]  The plaintiffs' claim against the hospital is a state law based claim of

---

[1] ***Plasmapheresis****.* Removal of whole blood, separation of cellular components from the blood plasm and return of the cellular components, suspended in other fluids, to the individual.  Also called *plasma exchange*.  4 J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine and Wordfinder, P-277 (LEXIS-NEXIS 2006).

[2] "Elevated AST and ALT levels can indicate liver inflammation and possible damage, and persons infected with the hepatitis C virus may have elevated levels of AST and ALT. .... However, the AST and ALT tests cannot definitely identify whether the cause of the elevated levels is due to hepatitis, nor whether the patient is infected with hepatitis A, B, or C.  AST and ALT levels can also be increased by certain medications, strenuous exercise, or injection into muscle tissue."  *Young v. Bresler*, 2006 WL 209127, *3 (E.D. Ca. 2006).

[3] Philip J. Soehnlen was included on his claim for loss of consortium.  Defendants are Aultman Hospital, Chapin Medical Co., Bayer Corp., Baxter Healthcare Corp. and American Red Cross for the tort of negligence in Mrs. Soehnlen's  treatment and in the screening/testing of the albumin supplied to the hospital.

5:06 CV 1594                                          2

negligence/breach of duty for the failing to assure that all medical equipment was properly sanitized and protected from spreading communicable diseases such as hepatitis C.

This case has been referred to the undersigned for supervision of certain discovery issues including those involving plaintiff and defendant Aultman Hospital.  The first of these matters was plaintiffs' motion for leave to serve additional interrogatories on the defendant Aultman Hospital and motion to compel discovery as to defendant Aultman Hospital (ECF #70).  This motion was heard on March 29, 2007 (ECF #79).  The undersigned ordered Aultman Hospital to respond to interrogatories 2, 3 and 4 and request for production of documents 1, 2 and 4.  This order did not include request number 1 from the second request for production of documents.  The parties were instructed to submit memorandum briefs regarding the following request for production of non-party patient records:

> The complete hospital chart, including blood work, lab results, consultation notes, history and physical and discharge summaries for each individual receiving treatment on the dialysis units identified as Cobe Spectra, Serial #1S04308 and Cobe Spectra, Serial #1S04304 during the time period extending from March 15, 2005 through and including March 26, 2005, with patient names, social security numbers, chart numbers, addresses and other personal and confidential information redacted.

Following the hearing the defendant hospital provided supplemental authority citing *Cook v. Toledo Hospital*, 169 Ohio App.3d 180, 862 N.E.2d 187 (2006), which interpreted Ohio Rev. Code §2305.253 as a privilege against disclosure of physician and hospital incident reports.

5:06 CV 1594                                             3

*Analysis:*

Review of federal case law reveals a tendency of the district courts to accede to discovery demands such as plaintiffs. However there is disagreement on whether to apply federal principles of common law on physician-patient privilege and disclosure of health records or state law pertinent to medical treatment or medical record privileges. The difference can be significant.

There is a line of cases allowing discovery either directly or under protective order of information of the type requested by plaintiffs based on federal principles of common law discovery. See *Coleman v. American Red Cross*, 130 F.R.D. 360, (E.D. Mich. 1990), *affirmed,* 23 F.3d 1091 (6th Cir. 1994); *Watson v. Lowcountry Red Cross*, 974 F.2d 482 (4th Cir. 1992); *Sampson v. American National Red Cross*, 139 F.R.D. 95 (N.D. Tex. 1991); *Long v. American Red Cross*, 145 F.R.D. 658 (S.D. Ohio 1993). On the other hand, cases applying state laws have reached differing results. In *Doe v. American National Red Cross*, 788 F.Supp. 884 (D. S.C. 1992), based on state privilege laws discovery was denied, but in *Marcella v. Brandywine Hosp.*, 47 F.3d 618 (3rd Cir. 1995), the court found the discovery of other patient records was permissible in redacted form under Pennsylvania law. Of course, Aultman Hospital contends that under application of the law of Ohio, there is a medical record privilege prohibiting disclosure.

To logically resolve this question, a determination must first be made whether to apply federal or state law. Rule 501 of the Federal Rules of Evidence on privileges was promulgated to accommodate the *Erie* Doctrine that, "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state." *Erie RR Co. v.*

5:06 CV 1594                                   4

*Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002).[4]  Evid. R. 501 mandates the federal courts to apply the principles of federal common law on privilege with the exception under its second sentence when "State law supplies the rule of decision."  If this were a simple diversity action, then a question of privilege would clearly be interpreted under state law.  See  *Legg*, 286 F.3d at 290. However, the case is not brought under the district court's diversity jurisdiction since plaintiffs and the hospital are both citizens of Ohio.

To further complicate matters, the rule with respect to pendent state claims as expressed in *Hancock v. Dodson* is that "in federal question cases where pendent state claims are raised, the federal common law of privileges should govern all claims of privilege raised in the litigation." *Id.*, 958 F.2d 1367, 1373 (6th Cir. 1992), quoting *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978).  In *Dodson,* removal was due to the inclusion of a federal question by virtue of the claim under 42 U.S.C. §1983 for civil rights violation, and consequently existence of a pendent state law claim did not relieve the court of the obligation to apply the federal law of privilege.  *Hancock*, 958 F.2d at 1373.  However, this case was not  removed  by virtue of a federal question under 28 U.S.C.§ 1331.

---

[4] Evid. Rule 501 reads in full:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

5:06 CV 1594                                    5

Defendant, American National Red Cross, removed this case pursuant to 28 U.S.C. §1441, §1446 and 36 U.S.C. §300105(5) citing *American Red Cross v. S.G. and A.E.*, 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992).  Congress in 36 U.S.C. §300105(5) permits the American National Red Cross to "sue and be sued."  The Supreme Court found 36 U.S.C. §2 (now 36 U.S.C. §300105(5)) created original federal subject matter jurisdiction where the American National Red Cross or its member chapters were a party.  The court, however, held federal jurisdiction did not exist under 28 U.S.C. §1331 as a matter of  federal question jurisdiction, but was "based on a separate and independent jurisdictional grant." *Id.*, 112 S.Ct. at 2472.  In effect, "federal jurisdiction over the Red Cross is 'party-based' independent of any other basis for federal jurisdiction such as diversity or the existence of a federal question."  *Roe v. Little Company of Mary Hospital*, 815 F.Supp. 241, 242 (N.D. Ill. 1992).  Accordingly, the choice of law favoring the application of federal law on privilege to the supplemental state claims from *Hancock v. Dodson*, does not apply since this case was not removed on the basis of  federal question jurisdiction.[5]


This leaves the question whether state law supplies the rule of decision for purposes of  the second sentence of Evid R. 501.  This rule's first and second sentences are not cleanly divided along the lines of  federal question and diversity jurisdiction.  Rather the first sentence presents the general rule to apply the principles of  federal common law.  Nonetheless as explained in analyzing Evid R.

---

[5] Naturally the lack of a federal question does not negate supplemental jurisdiction under 28 U.S.C. §1367(a), for the state law based claims against Aultman Hospital and the other defendants.  That statute reads in pertinent part, "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution."  Since the federal district court has original jurisdiction under 28 U.S.C. §1441(a) and 36 U.S.C. §300105(5), then it retains supplemental jurisdiction over the remaining claims in this matter.

5:06 CV 1594                                        6

501 with respect to suit remand under 36 U.S.C. §300105(5) by the American National Red Cross,

it is unnecessary to scrutinize the nature of the claim on which the case was removed to the district

court in line with *Hancock v. Dodson*.  Rather the focus is upon the nature of the claim in issue.

Plaintiffs' supplemental claim against defendant hospital is a state law based tort claim to which the

second sentence of Evid. R. 501 supplies the choice of law. The decision must rest on the *Erie*

doctrine, again "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress,

the law to be applied in any case is the law of the state."  *Id.*, 304 U.S. at 78.


"A federal court exercising supplemental jurisdiction over state law claims [under 28 U.S.C.

§1367] is bound to apply the law of the forum state to the same extent as if it were exercising its

diversity jurisdiction." *Super Sulky, Inc., v. U.S. Trotting Ass'n*., 174 F.3d 733, 744 (6th Cir. 1999);

*Chandler v. Speciality Tires of America (Tennessee), Inc*., 283 F.3d 818, 823 (6th Cir. 2002). The

federal court is to "apply state law in accordance with the controlling decisions of the state supreme

court." *Moore v. Detroit School Reform Bd.*, 293 F.3d 352, 359 (6th Cir. 2002), *cert. denied*, 537

U.S. 1226 (2003); *Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).  When the state's

highest court has not decided the issue, the federal court must ascertain the state law from "all

relevant data." *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir. 1995)

quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985); and see *Rousey v. U.S.*, 115

F.3d 394, 397 (6th Cir. 1997); *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d

690, 698 (6th Cir. 2006).  All relevant data includes the state's intermediate court decisions,

restatements of law, law review commentaries and decisions from other jurisdictions on  the

5:06 CV 1594                                    7

"majority" rule.  *Rousey*, 115 F.3d at 397; *American and Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 158 (6th Cir. 1997).

Plaintiffs request the complete hospital chart including blood work, lab results, consultation notes, history and physical and discharge summaries for each individual receiving treatment on what is misidentified as the "dialysis units" during March 2005 with patient names, social security numbers, chart numbers, addresses and other personal and confidential information redacted.

Ohio jurisprudence has codified the patient physician privilege under Ohio Rev. Code §2317.02(B).  Granted under Ohio law a blood donor is not a patient within the meaning of this section and that medical information is not privileged under this section.  See *Doe v. University of Cincinnati*, 42 Ohio App.3d 227, 538 N.E.2d 419 (1988) on subsequent appeal, 70 Ohio App.3d 354, 591 N.E.2d 9, cause dismissed, 63 Ohio St.3d 1402, 585 N.E.2d 424 (1992).  However, the information plaintiffs seek is not merely about blood donors.  Under Ohio law any patient/physician contact beyond that of merely a blood donation, such as having blood alcohol testing falls within the privilege.  Hence the need under Ohio Rev. Code §2317.02(B)(1)(c) to exempt test results from "patient's blood, breath, urine or other bodily substance" in a criminal action.  See *State v. Scharf*, 2005 WL 1940361, 2005 - Ohio - 4206 (Ohio App. 11 Dist.) (although Ohio medical records are protected by statute, the privilege does not apply to test results performed to determine the presence of concentration of alcohol in the patient's blood so that the physician/patient privilege is waived with respect to any test that is relevant to a criminal offense.) Ohio's physician/patient privilege was also at issue in *Biddle v. Warren General Hosp.*, which held, that "[d]isclosures of otherwise

5:06 CV 1594                                    8

confidential medical information made pursuant to statutory mandate are certainly privileged such

as occupational diseases . . . diseases which are infectious, contagious or dangerous to public health

. . . medical conditions indicated of child abuse or neglect . . . and injuries indicative of criminal

conduct."  Pursuant to Ohio Rev. Code §3707.06 governing reports of contagious or infectious

diseases, a physician who attends to a person suffering from hepatitis C has a duty to notify the

health commissioner.  Further information reported under this provision is "protected health

information "pursuant to §3701.17. See Ohio Rev. Code §3707.06(C); and see Ohio Administrative

Code 3701-3-02(A)(3)(n).  In accordance with *Biddle* an independent tort exists for unauthorized,

unprivileged disclosure to a third party of non-public medical information that a physician or

hospital has learned within the physician/patient relationship. *Biddle*, 86 Ohio St.3d at 395 (syllabus

¶1).


Nevertheless the second syllabus of *Biddle* allows disclosure in the absence of prior

authorization of privileged matters, "where disclosure is made in accordance with a statutory

mandate or common-law duty, or where disclosure is necessary to protect or further a contravailing

interest that outweighs the patient's interest in confidentiality." *Id.,* 86 Ohio St.3d at 395 (syllabus

¶2).


Plaintiffs seek results from blood work where there may be positive ALT or AST indications

or references to hepatitis C and other lab results, notes or summaries for each of the individuals

receiving treatment on the identified "dialysis units."  Plaintiffs' theory is that the contagion was

spread from a patient to Mrs. Soehnlen and the defendant hospital has not shown that this would be

5:06 CV 1594                                          9

impossible.  Given the futile efforts uncovering a cause for Mrs. Soehnlen's hepatitis C from prior depositions, interrogatories and the other requests for production of documents it becomes an issue of necessity to establish her claim.  In those cases the state appellate courts have recognized that there is a contravailing interest that outweighs the non-party patient's interest in confidentiality so as to allow disclosure of redacted medical records of non-party patients. See *Richards v. Kerlakian*, 162 Ohio App.3d 823, 825, 835 N.E.2d 768, 2005 - Ohio - 4414 (2005); *Fair v. St. Elizabeth Med. Ctr.*, 136 Ohio App.3d 522, 737 N.E.2d 106 (2000).  Compare *Yoe v. Cleveland Clinic Foundation*, 2003 WL 549923, 2003 - Ohio - 875 (Ohio App. Dist.) (medical records of non-party patients who had surgeries performed by surgeon on same day as patient were not necessary to show that surgeon operated on more than one patient simultaneously since patient was provided surgery room schedule for that day and had ample opportunity to cross-examine or challenge the surgeon or any alleged time discrepancies.)

Further the undersigned does not find defendant hospital's argument persuasive based on Ohio Rev. Code §2305.253 governing incident reports.  This privilege "specifically targets documents that report an incident involving injury or potential injury suffered by a patient while receiving medical care by a health care provider.  If this type of document is prepared by or for the use of a peer review committee, it is to be confidential and not subject to discovery."  *Cook*, 169 Ohio App.3d at 187 quoting *Doe v. Mt. Carmel Health Sys.*, 2005 WL 3547970 ¶18, 2005 - Ohio - 6966 (Ohio App. 10 Dist.).  In *Cook* the plaintiff patient had specifically requested incident reports and notwithstanding whether there would be any exception to this under *Biddle* or an analogy thereto, the defendant hospital has not demonstrated that privileged incident reports as defined under

5:06 CV 1594                                          10

the applicable statutes are at issue here.  If it turns out that contemporaneous incident reports were

filed due to injury or potential injury suffered by a patient while receiving medical treatment at issue

in this case, then defendant hospital can certainly refer to these contemporaneous incident reports

in a privilege log for subsequent determination of privilege by the court.

 

     For the foregoing reasons, the plaintiffs' motion to compel discovery with respect to

defendant Aultman Hospital and specifically with respect to request number one from the second

request for production of documents, is granted (ECF #70).

 

     IT IS SO ORDERED.

                    s/James S. Gallas
                United States Magistrate Judge

Dated: May 4, 2007